On behalf of Defendant Appellant State Farm, I'm here with co-counsel Scott Spragans and also behind the bar is a State Farm representative, Leonard Kerfurst, one of the corporate lawyers from State Farm. Your Honors, I'd like to address three primary things today. One is that Judge Mills got wrong his eerie guess as to what Mississippi law would provide in respect to the definition of ACV and whether or not all aspects of replacement costs could be depreciated when calculating ACV payments. I'd also like to address, regardless of whether Judge Mills got that guess wrong, whether his class certification determination was correct. We'll advocate here, and we believe this to be the case, that either way, if he had made the correct substantive call, the class should not have been certified, and even if he made the correct substantive call, the class should not have been certified. Now starting with the issue of what the policy provides and the contractual ambiguity issue and the like, the State Farm policy, Mrs. Mitchell's policy, which is located at 4606 of the record and the law settlement provision is at 4631, provides that State Farm will pay the cost to repair or replace the property, subject to the following, you know, until actual repair or replacement is completed, State Farm will only pay actual cash value up to the limits or up to the cost to repair or replace. When actual repair occurs, State Farm will pay any additional amount that is actually and necessarily spent to repair or replace the property. So the contract provides for actual cash value at the first stage. That's important to the contractual construction issue, but it provides for a cost of repair limitation in three places, and that's important to the class certification determination. Now the reason we suggest that the court got the ambiguity call wrong, and by the way, there's no dispute between the parties as to what ACV means. It's pretty well delineated by Mississippi law, actual cash value equals replacement cost minus depreciation. That there's no dispute among the parties that that's what ACV means, not defined in the policy, but defined as a matter of law. So the reason the court got that wrong, first, there's nothing ambiguous about that term. It's clearly stated by Mississippi law. You probably just want to know where we have difficulties. Okay, sure. One set of concerns I have, so you can address them, is if the record does reflect that your client had a form, the 3650 form, that could have made it clear, there's sort of a negative implication, maybe it isn't clear, and when you want to make it clear to the insured that labor cost is included, you've got a form for it. But more importantly, on the point you're making, the eerie guess, it seems, although there's a lot of circuit authority both parties have given us, it seems to me that they're all conforming to themselves. If you're in a state like Missouri, where the issue is just the value of, then that is more discernible, it's the entire thing packaged together. But if you're in a state like Arkansas, what's the case interpreting Arkansas law, is that Stewart? Stewart, yes. And then if you're, or then ultimately Hicks, the Sixth Circuit case construing, what was that, Kentucky law? Kentucky law. Those two are similar to Mississippi's, where actual cash value is replacement minus depreciation. And what everyone seems to be saying is when that's the formula, replacement implies you get your full roof back, but you can't do it if you don't have the money to pay for the labor. And then depreciation isn't broken out into material, non-material. So there's just a lot of ambiguity, and in those cases we defer to the, that seems to be where courts are going with this. In terms of the dichotomy that you expressed, Your Honor, that dichotomy doesn't really exist. I mean, Graves, Graves is a replacement cost minus depreciation. Graves is the one authority that doesn't fit into that, but Graves is, it's unpublished, right? Yeah. There isn't much analysis. Popperello is a case out of Pennsylvania that is... Go ahead. That's a state case, though. It's a federal district court case. I guess I'm looking at the orbit of circuit authority. It tends to be where I look first if there's no Supreme Court. And it seems like at first you rely on the briar, but then the 8th Circuit itself corrects itself and says, well, in Stewart, where we had law like Mississippi's, it's ambiguous. And then you had originally favored Hicks, but then it goes back down. We have a class certification looking at law very like Mississippi's. I agree Graves is problematic to that way of looking at it. So with Hicks, you have an unpublished decision out of the 6th Circuit with a split panel with one person saying that's a false, one judge saying that's a false dichotomy between the two. Yes. You have Stewart and LaBarre are two different panels of the 8th Circuit that came out different directions. If you prevail, would you think that we would have to say that in particular the Hicks decision is wrong? The majority decision? I don't know that you would have to say the Hicks majority decision is wrong as to Kentucky law, you know, but in terms of drawing that distinction, that distinction from that unpublished panel is a false distinction. I guess the amici here slightly convinced me if you're supposed to indemnify, if you really want to replace a roof, you aren't going to be able to replace it if you can't pay for the labor to put it on. What's wrong with that sort of overly simple? That's not what actual cash value is. Actual cash value is the cash value of the damaged property at the time it's damaged. It's ACV is not an amount that's intended to repair or replace the property and put back on an old roof. By the way, who does that? Why isn't it? That would be the formula. It's the cost to replace the roof minus depreciation and intuitively what's depreciating the materials are. The labor isn't. Yeah, the, the, the, the, uh, the methodology replacement costs minus depreciation is simply a way to try to arrive at the actual cash value, but if it's ambiguous as to a point that isn't clarified and yet state farm reps have a little toggle, they can just click one little toggle and it takes out non-material depreciation. Well, and I guess, let me put that as a question. Do you have a form called 3650 that specifically clarifies for people? There is a form 3650 that was introduced after all of these rashes of class actions. I mean, labor depreciation wasn't a thing for, for years and years. You know, it, the first case that dealt with it was the Oklahoma Supreme Court case. Red corn, which said, of course, you know, when you depreciate, you depreciate the, the, the full, the full object, the roof, the roof is an integral unit. It's not separate elements. And so it's logical to depreciate it all. I thought in this extreme max thing, it's right there. You can toggle out labor and you don't even, even in Mississippi, I thought that you don't, they don't click depreciation for things that are labor only. Well, I, I'm not sure I followed that question. I thought it, is it called, what's the, the, the, the thing that they're using? X, Xactimate, Xactimate. Okay. Xactimate is, I thought that they're, they're actually the little check boxes when it had no, when it was clearly just labor, they wouldn't even click that as a depreciable. Xactimate is an estimating software that is developed over the decades. Yes. The current version has those little default settings that can be used. Yeah. Historically, there weren't those default settings. So it's taken a while to get to that point. Just like it's taken a while for the issue of labor depreciation even to be developed. It, it, it was never an issue historically as the amicus brief of the trade associations reflects. HCV has always been determined in a certain way. It, it wasn't an issue in, you know, with the Redcorn decision. All of a sudden it became an issue in 20, 2013 with the Adams case in Arkansas. So this is a, a creative theory of, of, of class action lawyers. But it, it, it didn't really have any footing for decades. You know, HCV has been determined the same way for decades. So you get a rash of lawsuits. What do you do when you get a rash of lawsuits and say, hey. Tighten it up. Yeah. That doesn't concede original ambiguity. By no, by, by no means. By no means. You confirm what the original meaning was. Sixth and the Eighth Circuit is, well, they, they sort of bought into ambiguity, but it's just not there. It's not there. Correct. Correct. And, and, and why wouldn't it be there? Well, you, you look at replacement cost minus depreciation. What's ambiguous about replacement cost? Look at, look at what Judge Boyle did in the Tolar decision in the Northern District, where the challenge there was can you depreciate sales tax? Can you depreciate general contractor overhead and profit? And she said, well, you know, of course you can. I mean, you look at what replacement cost is, and those are elements of replacement cost. They may be elements of replacement cost, but it just doesn't intuitively make sense that you're depreciating labor. I, I, there, you know, there's just a lot of case law out there. And so the one that, that you dealt with in footnote 21, Judge Oreck's decision, where did Judge Oreck go wrong? Remember in the Johnson case? Oreck saying, you know, there may be damages issues. This may be jumping to your second issue, which you probably want to get to anyway. Right, right. I would. Yeah, okay. Okay. On, on the class front, you know, the issue with the class front is, is if, if there's no rule, no predominating question, like, um, is it a breach of contract to depreciate labor? You know, which is what Judge Mills said. Then the only issue is, was the amount sufficient? Did the amount meet the ACV requirement? Did the amount meet the cost of repair requirement? Issue, was there a loss inflicted? And it would seem like anyone who accepted ACV, I agree, Ms. Mitchell could have done the repairs herself and then gotten the full amount. We would have no problem here. But once she or anyone takes ACV, if it doesn't include labor costs, every one of those people has gotten less. Um, no, not necessarily. Okay. Because one thing to look at is it's an estimate. Yeah. It's an, it's an estimate. They get to keep it. There's no evidence in the record that they have to. They don't have to, they don't have to return the estimated amount. But if, if, if they come back and challenge that, that, that amount wasn't enough. That amount wasn't enough. Then certainly State Farm is entitled to defend by saying, you bet it was, you know, we think it was calculated correctly, but not only that, here's what the evidence has shown as to what this individual or that individual did to actually repair the, repair the property for the ACV amount that was provided. They say in the red brief, I didn't see your answer in the reply brief. They say that in three different states, you've done easy refunds on this amount. No, no, no, no easy refunds. That what was done in, in three states was after rulings took place by the district courts and there wasn't already in place the new endorsement to fix against this new class action theory in those states, State Farm looked at the current, the current open claims, not refunding historic claims, the current open claims. And to the extent there wasn't an indication that repairs had taken pace on those current open claims, they, you know, made a supplemental payment, no refunds, simply taking care of that small window until a change had been made in the, in the. This class, the class certified here is not just current open claim? Oh, absolutely not. It's, it's, it's, uh, 2014 to 2017, roughly. State Farm has never toggled to find out and given back the labor amounts that were withheld? In, in Mississippi? Well, in any case. No, no. I mean. I guess I'm looking to, in terms of commonality, superiority, predominance, that is this an easy like Slade decision case? Oh, it's absolutely not a Slade decision case. I mean, this is not an easy case like that at all because you have, you have first a different contract with a cost of repair limitation. So you have a different contract with the cost. You're running out of time. I got a little bit of problem with, with the supplemental payment you said that was on an open claim. And so it wasn't any kind of a refund and they were only open claims. It was an open claim on which a payment had already been made. Is that what you said? Yes. Open and still, it was still a current active claim for which an estimate had recently been. Well, if a claimant has received a payment from the insurance company. Open and. So what did it say? It's not in full, final and complete. Simply open in the sense that the, that the claim came in after the decision of the court ruling that labor depreciation was inappropriate. But, but, but, you know, before a change had been made in state farm system. That's what I meant by open in that context. Not a historical look. Is this one minute for rebuttal or is this one minute? Okay. Does that address your, does that address your question, your honor? I have some concerns, but you only get, you only have 52 seconds. I mean, you said you call the supplemental payment, which sounds to me like a payment has already been made. Yes. Yes. Were you holding it open to make more pay? No, no. It's simply, it's simply. So you're telling me the insurance company makes a payment. They hold the claim open just in case you ask for more. No, these are simply open in the sense of they had been opened since the time of the decision of the court that had made a ruling substantively about labor depreciation. I'm probably just getting hung up on the supplemental payment. You're saying no payment had been made at all on the claim. Well, it may have been made. So you re-reviewed the claim. Pardon me? You re-reviewed. Yes, yes, yes. Re-reviewed claims in a small window of time. All right. Thank you, counsel. Thank you. May it please the court. My name is Joe Snodgrass. I'm from Larson King in St. Paul. I have with me David McMullen and I have with me Brandon McWhorter. I also have with me my client, Lorene Mitchell. I wanted to start out by pushing back a little bit against what counsel stated about or suggesting that this is always the way it's been done in every state by every insurance company. That is not consistent at all with the record evidence. There is, for example, at record 4083 paragraph 21, Toby Johnson, a property adjuster for over 70 insurance companies, says that only 50 percent of the companies will require the use of the labor depreciation option settings. We see, we also at ROA 237 and 238, we provided administrative materials from different states where the state insurance regulators are calling the practice of not depreciating labor the standard practice. We see articles from senior property adjusters saying that withholding labor was not the way it was done in the past. That's at ROA 241. We see this. You're saying it's a patchwork. It's chaotic. Well, at the very least, it's a very strong set of property insurers such as Nationwide and some others that say we will not depreciate labor. And so the problem becomes, and we see it back in the courts back to 1961, in fact, it's not depreciating labor. The problem becomes, you saw, and I think it's on, in our brief, there's an example where you have the same claim and because of toggling this stuff up, your ACV payment for a wood floor goes from 6,600 bucks to 3,700 bucks. So it's a big difference between buying good insurance and really weak insurance. And so what is a consumer? Well, in either in Alabama legally, or you get that more expensive 3560 form and you get. Exactly. In other words, a policyholder should know what they're being, what they're purchasing. And as State Farm indicated, they were sued back in 2002 in Oklahoma. And they, as Judge Steele in the Arnold case said, they skated by on a 4-3 decision over a strong dissent. But anyways, the point is, what is the problem with telling policyholders what they're buying by saying what you're going to do with labor depreciation? Forms, we were able, and this is the record too, that record at 267, we found forms dating back to 2008 in the computerized surf record system for Mississippi. It goes back just to 2006. But we had forms over a decade where carriers are telling people, you know, hey, we're going to depreciate labor. And so people would know what they're buying. In other words, State Farm says we didn't modify our form because Mississippi law was so clear. I don't think that's accurate. I think the truth is they didn't modify the form because if they told people they were buying weak insurance, they might have lost market share. In other words, why didn't you? They're a savvy, one of the savviest, biggest, they are the biggest homeowners insurance company in the country. They made a decision not to modify those forms. Those forms were like over a decade old. So put yourself in the policyholder's position. What should the market have? Transparency. Transparency. There was ambiguity, which inures to your client's benefit. Exactly. They didn't, they did not cover it. We. When you say exactly, you have separate claims that allege bad faith, gross negligence. We do. If you're to prevail that this is ambiguous, then that means their view might be persuasive. Yours might. That wouldn't support bad faith and gross negligence, correct? Okay. Let's skip ahead to the bad faith and gross negligence. If you're saying that this formula, replacement minus depreciation, it doesn't pair out material and non-material. Right. Is ambiguous insurance insurance benefit. They can't, that can't at the same time say, but State Farm. There is this case in Broussard, a fifth circuit case, and that is 523 F 3rd 618. It has held that Mississippi courts have held that under certain limited circumstances, an insurance may recover punitive damages, even though the insurer had an arguable basis for denying their claim. Remember on the extra contractual claims, all the court trial court has done is it said the pleadings were good enough to go forward. That's all the court did. In fact, on page five of his certification order, he said, whether or not bad faith or negligence can go forward, that's a decision to be made way down the road. That's. Why would it be for, for, from standpoint of class certification? If each, if bad faith would turn on their dealings with the individual, did they lure them into this by the cheaper one? It'll cover. Well, let me put it this way. Hypothetically, if State Farm made a decision in 2002 after, if it was first sued to purposely leave its policies ambiguous, does that raise to a level where you have a breach of the duty of covenant of good faith and fair dealing? This is the limited circumstances that Broussard was getting it. And I'm sorry, again, back on your contractual point, though, opposing counsel did, did point to the 10th Circuit decision, Graves, which seems squarely opposite to you. So if we rule in your favor, are we creating a split? I, I don't think so. Graves obviously is, is predicting Kansas law. And I think. But Kansas law is identical to Mississippi law in defining ACV. The shift in the case law started, I believe, with the Arnold decision by Judge Steele from the Southern District of Alabama. That then was followed by decisions out of Illinois State Court. You had the Hicks decision in October of 2018. You had the April 2019 unanimous Tennessee Supreme Court decision. So you start going down that path. If you look at states, if you look at state Supreme Courts, which are really the ones that are the ones that have the binding authority, it is consistent. Minnesota is an outlier. It's my state. I argue that case. But Minnesota allows you to appraise in legal issues, which is very unique. So Minnesota is kind of an outlier. It says whether you cannot, you can appreciate labor. That's a question of fact. You have the Arkansas Supreme Court saying you can't appreciate labor. Unanimous decision on a replacement cost less depreciation state. You have the Tennessee Supreme Court in a replacement cost less, less depreciation jurisdiction. Unanimous 5-0. So the state Supreme Courts, which are the binding ones in these types of jurisdictions, are saying you can't do it. But you are telling us it's totally an issue of Mississippi law, even though it's identical, so we can draw. So, and therefore, you particularly would find comfort in the, what's the decision, Belafonte? Belafonte. Perfect decision. It's dealing with a transmission of a truck that has a 300,000 mile lifespan. There's a dispute about whether or not it was overhauled at a certain point in time. But on a replacement cost less depreciation policy, the court held, yes, you can have materials of the same age and condition, but you're not going to depreciate labor. Then you also, there's six really kind of key decisions, Hicks and Lammert being one of them, but in Mississippi you have Belafonte, then that's followed up by Titans Exterior with, hold on, that's Judge Davidson. You can't appreciate labor. He's citing Belafonte. You have the Lammert District Court, Federal District Court decision, Chief Judge Waverly Crenshaw in that court saying, citing Belafonte for the proposition on point. Then you have the August 4th, 2017 bulletin from the Mississippi Insurance Commissioner issuing a bulletin that follows Belafonte. Hey, if you're going to depreciate labor, you better— How many of those, I looked at them, but I forget, are not in the car context. They're in the home context. Lammert and Titans Exterior are not in the car. They're labor depreciation class actions. You have the Hicks decision in October of 2018 and then the Lammert decision of April 2019. And so those obviously are just, they're the most recent replacement cost less depreciation states, but from Mississippi, the four things are again, Belafonte, the two district court decisions, and then the bulletin of the insurance commissioner, which is important. And Your Honor sat on the court, so I'm not going to tell you what this Mississippi Supreme Court, you probably know better than anybody here. But as I understand it, Mississippi tends to defer a little bit to the insurance commissioner. So here we have a bulletin that follows a Supreme Court decision. It seems this jurisdiction, it's not so much a guess, it's just following the law. Um, I want to get into the class certification issues. And before we get and even talk about class certification, I want to take a step back and normally you don't do this, but I want to just give 20 seconds to talk about standard of review. It's abuse of discretion on class certification, which as I understand it in this circuit means all reasonable persons would reject the view of the district court. Here, it would almost be inconceivable that the court would have been found to abuse his discretion when you consider the Stewart decision. Why? Judge Mill's decision was handed down on September 24th. Stewart was set to be argued two or three days later. The parties immediately gave the Eighth Circuit Judge Mill's decision and during oral argument, Judge Mill's decision was quoted to the Eighth Circuit by the parties. It's not surprising the Eighth Circuit has a decision that's very consistent with Judge Mill's decision. And so in other words, to find Judge Mill's abused his discretion in his certification order, no reasonable judge would adopt the view of the district court. You'd have to think that that unanimous Eighth Circuit panel was completely wrong across the board and in addition to Judge Mill's. What if you just think it's distinguishable because, and correct me if I'm wrong, in that case it was an easier issue, right, Stewart, because the Arkansas Supreme Court had already itself said labor's out. There's no doubt. If your honor, if the court determines that they can depreciate labor under the law as interpreted by this court under that contract, you're not getting to class certification. I agree. But I'm, but I'm assuming that if your honor. I'm assuming on the first issue we see ambiguity, we line up with Arkansas. Even though it isn't as clear a statement, it's not as clear an issue. But once, if we were persuaded there's ambiguity, then it all falls in line that this is. Right. If you, hypothetically, if there's an ambiguity finding in our favor or your honors determine, you know, Belafonte and the commissioner's statement, these are controlling, then now we're going to class certification. And if you get to class certification, you really have to find abusive discretion now. And to me, that's pretty hard, pretty inconceivable given the Stewart decision. The thrust of their counterargument, though, is that these are just estimates, right? And, and in turn, we don't know what the cost cap was. We don't know if other people actually, you know. Right. Were given more than they needed to fix the home. Perfect. Therefore, to ascertain actual injury and loss requires highly individualized considerations. Sure. And that is a complete misreading of State Farm's policy. I have, hopefully, I have a Mitchell oral argument exhibit one, which is the provisions that everybody's talking about with this cap. This is just taken literally from Judge Mill's order. And for Judge Jolly, this is page one and two of Judge Mill's cert order. And so the cap language that they're relying on is in paragraph 1A1, which says, until replacement, repair or replacement is completed, we will only pay the actual cash value at the time of the loss of the damaged part of the property up to the applicable limits of the liability shown in the declarations, not to exceed the cost to repair or replace the damaged property part of the property. Okay. It's important to also read A2, which talks and says when the repair replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend. So I want to make it crystal clear that when they're talking about that not to exceed language, that is the estimated estimated cost. It is never the actual cost. We know this for several reasons. One, if you look at, for example, the Juan Guevara declaration that is on tab five of the supplemental materials submitted by State Farm, this is a State Farm executive, quote, generally an ACV payment is calculated by subtracting depreciation and the insured's from the estimated replacement cost. The adjuster in this case also testified that the not to exceed language is the estimated, not actual, that's ROA 1910. The reason why it's always estimated, not actual, it's that Johnson decision that Your Honor was citing earlier from the Northern District of California. But if you look, for example, at the language, it's prospective. An ACV payment always takes place before all the repairs are done. Otherwise, it'd be replacement cost coverage. Replacement cost coverage. Therefore, you agree it could lead to windfalls. What's that? It could lead to windfalls if the cost using the ACV amount was excessive. Are you talking about if they made a mistake now? Well, I guess if she goes out and finds a contractor that can do it for less. Okay, and so ACV again, okay, I understand what you're saying. And I may be mixed up, so. No, but that's how ACV works. It's a prospective payment before replacement cost. They get to keep it no matter what. They get to keep it no matter what. In fact, you don't even have to make repairs. Ms. Mitchell's never made repairs to her property, okay? That doesn't mean that they get to take a discount against her ACV payment and wait until she repairs. You're saying she just was entitled to that labor amount more because she made the decision. She just was given less. Exactly, exactly. In fact, this case is different from all the reasonable insufficiency cases. We accept every single one of the State Farm Adjuster's condition assessments, the measurements of the property, etc. All we're saying is toggling it off. If you look at Exhibit 3 of the oral argument, that's the toggling on and off boxes. Literally, you take everything that their adjusters did as God's word, and you just— The second one? Yeah, you uncheck depreciate non-material, and that's it. We don't change. We don't contest any of their judgments, okay? And so that's important. The issue of— I'm going to interrupt there because I asked a few questions. In your brief, you represented they'd done that in three other states. Absolutely. But he had a response that, no, in fact, it was a much more limited refund amount. Our expert has testified that it takes two to three minutes. Their witness said it took them 15 to 20 minutes to do this toggling on and off. Regardless of whether it's two to three minutes or 15 to 20 minutes, as Judge Mills said, it doesn't really matter. And the other thing is, please step back and consider this. The class is defined to only include covered claims. An insurance company does not have an exclusion in its policy to say, hey, if it costs too much to adjust your claim, we can get out of paying it. In other words, if I have a $50 claim and I want to submit it to my insurance company, even if it takes the insurance company $75 to adjust my $50 claim, they still have to do it. And so please keep in mind the class is defined to only include covered claim. There's no reason or basis for the insurance company to get out of doing it, even if it took 15 minutes as opposed to three minutes. But having been in lots of class actions, whether it's wage an hour or the BP oil or whatnot, 15 minutes to two to three minutes on a formula, this is a no-brainer. This should be an easy case to certify. How many courts have said on this issue, because I know it's exploding around the country, that it's not a class-suitable case? So in other words, what cases do you have to distinguish? LeBreyer did. LeBreyer did it because they disagreed with the law. And he done it agreeing with your view of the law. Yeah. And he said it's not suitable, even though we find that labor shouldn't have been depreciated. There's not one. The Alabama had a state Supreme Court one where the class rep was found to not be good enough for some reason or another, but it was not based on the merits. As the judge said, I believe it's Wilhoite in the Sixth Circuit case, in the certification decision in Hicks, this is now after remand, he said the cases are unanimous if we find that the policy does not permit labor depreciation. All the cases permit certification. OK. And so that goes back again. We're still dealing with this abuse of discretion issue. And then back on that lesson ACV, there's a whole series of case law also that's cited on page 24 of our March 14th brief. Not only Stewart, but an 11th Circuit case, Mills, a Sixth Circuit case, Parkway saying ACV is based on, is not what you actually spend to repair, just doesn't matter. Consider, for example, Your Honor, if you just did the work yourself. Does that mean that State Farm gets all its ACV payment back? Because you donated all your own labor to your own thing? That's not how ACV works. ACV is based on estimated costs. And what you get is what you get. There was also an issue about many... The bullet in the insurance commissioner doesn't say that it's against Mississippi law to depreciate labor, does it? It says if you want to do it, it needs to be in your policy. Clearly set forth in your policy. It says that needs to be clearly set forth? Yes. Um, there's also an issue about many trials. Well, and I also want to talk about Stewart because on September 24th, 2019, if you look at the Stewart docket, in Stewart, the plaintiffs are moving for summary judgment, not partial summary judgment, summary judgment across the board for the whole class for a specific monetary amount. And so if that's certainly a possibility that that whole case can be disposed of without any trials, it certainly is against the defendant's argument that there's going to be a series of mini-trials. And, you know, every class certification order is conditional. And so all we're asking is let Judge Mills go forward with the case as he has it right now. I see I'm out of my time. Thank you, Counsel. Rebuttal. Thank you, Your Honor. So I want to address several points. Hicks, by the way, is on, is on appeal presently to the Sixth Circuit on a Rule 23 Act. So that, that, that is on appeal on a Rule 23 Act. Even after they allowed the 1292B appeal, they determined Kentucky law, under Kentucky law, State Farmers Policy would not allow. That's pending. But is there any case, district or circuit, that has said, if they find against you on the eerie guess, still not suitable? I, I, I, I mentioned LaBriere previously. Other cases that I would like to mention are. But LaBriere is on the first issue. Yes. Okay. Is there any case? No, it's on both. I know. But the reason they say it's not suitable is because, right? Is there any case that has said, we agree it's ambiguous, but we're still going to say it's not suitable for class treatment? Have they, has any case said that, that bluntly? Um, the specific question you asked, none come to mind presently. But what I do think about is, I think about the Winn case by Judge Vance. Um, very, very, uh, and the, uh, as well as the Schaefer case by, by Judge Duval, which were both cases where the, um, where the plaintiffs challenged different elements of an estimate. In, in, in the Winn case, uh, plaintiff said, we'll take all aspects of your estimate, just like Mr. Snodgrass indicated plaintiffs would do here. All we're saying is the percentage of, of GCOP wasn't enough. Applying, applying Fifth Circuit law, um, what Judge Vance said is, you know, you can't, you can't, uh, there's no way of trying that on the merits. You'd have an ability in each and every claim to prove up whether or not the amount paid was actually sufficient, whether or not the amount paid actually, uh, was enough to satisfy repair costs. And, and she, she applied Maldonado. She applied, uh, Robinson. She applied, uh, uh, uh, Bell, Bell, uh, uh, Atlantic, all, all three of those, she said stand for the proposition that to do, to reach predominance, you have to establish an ability to try it on the merits. You know, Judge Jolly's relatively recent decision in Jean and Jean in a TCPA context, albeit a, a, a different claim. But, but in, in, in that decision, what the Fifth Circuit said is you have to have an ability to prove, you have to show how you could try the case as a class case on the merits. And there, the defense was the consent afforded on faxes. Here, the defense is, has the cost of repair been met? Has it, was the amount sufficient or not? And that can be proved in each and every issue. Your argument is that you can't, you can't try it on the merits. The only argument is about the formula that's being applied to, to the labor cost, isn't it? No, not at all. Because the obligation, the obligation, the law settlement obligation, three places, by the way, we don't just rely on 1A in that, in that contract. The obligation is to pay the cost of repair, uh, to pay actual cash value until actual repairs are done, not to exceed cost of repair. To pay amount actually and necessarily spent, if more than that. So our, the obligation is capped. But I thought this was about an argument on whether or not you get to depreciate labor costs. No. I mean, that's the manner in which Judge, Judge Mills styled it. Um, but it's not simply that at all. The, the class issue is, was the total amount sufficient? And Judge Vance said, well, you know, the total amount may be sufficient for any number of reasons. Maybe they didn't need it. Maybe sufficient even if you shouldn't have depreciated. Even if you shouldn't have. Even if you shouldn't have. And that's, and that's the proposition that we're, we're, we're pressing for here. Now, this isn't a hypothetical. That would mean you got a justice out there doing really bad estimates frequently. Well, not even necessarily. No, not even necessarily bad estimates. They're just estimates. That's all they are is just estimates. But how much you pay is tied to your own estimate, isn't it? In, in, in the first, in the first, uh, payment that is made. Yes. You know, well, you'd make an actual cash value payment. They may, uh, the insured may come back with, uh, may. How often does an insured come back and get a supplemental payment? Often. Often. 20% of the time? No, no. Heavens no. 50% of the time? At least that. At least that. But, but in this instance, Mrs. Mitchell, for example, had a contractor that said, I'll do the work for the amount, you know, that's contained on the replacement cost estimate. Wouldn't the relevant question be, how often does State Farm come and say, we want some back? No, the fact of, the fact of not going and asking for it back doesn't mean, doesn't, doesn't mean that there's not a cost of repair limitation. What State Farm does do, if you come forward with a replacement cost, um, uh, receipt. I mean, you seem to be saying generally you're overpaying most of your claims. Not, not, not saying that, but saying it's an estimate. An estimate is that, you know, it's created with a, a range of prices, you know, an average price, exact, exact where it provides. And, and if you're providing an average price, some are going to be higher, some are going to be lower. Or judgments are made as to how much depreciation to extend, you know. Thank you, counsel. Okay. We'll take this matter under advisement.